ORIGINAL

Shinohara.Sentencing.RSP

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice
RUSSELL C. STODDARD
First Assistant U.S. Attorney
JEFFREY J. STRAND
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
SEP 30 2005
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GIL A. SHINOHARA ) <br> a/k/a GIL SHINOHARA, ) <br> ) <br> Defendant. ) <br> _____ ) | CRIMINAL CASE NO. 03-00047 <br><br> **GOVERNMENT'S RESPONSE TO DRAFT PRESENTENCE INVESTIGATION REPORT** |

COMES NOW the United States of America, by and through undersigned counsel, and submits to this Honorable Court its response to the draft Presentence Investigation Report ("PSR").

A. <u>Aggravating Role</u>.

In paragraphs 96 and 104 of the PSR the defendant is given upward adjustments of two offense levels for being a supervisor of the activities of the Pedro's Plaza partners. The record at trial supports that finding, the defendant was a supervisor of the scheme described in the counts of conviction. But the PSR does not go far enough in describing the role that the defendant played. Only the term "supervisor" is used in the PSR although the section of the guidelines from which the upward adjustment stems also includes as equivalent aggravating roles the positions of

"organizer, leader, [or] manager." U.S.S.G. §3B1.1(c). The evidence at trial supports a finding that the defendant was not only a supervisor but also an organizer and leader.

Application Note 4 to U.S.S.G. §3B1.1 states that:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others, There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

That the defendant had decision making authority is supported by the testimony of William Flores who stated that the defendant was a co-decision maker in regard to using the $300,000 renovation money for personal benefit. Important to determining the leadership status of the defendant is that initial decision to commit an illegal act was made prior to meeting with and consulting the other two partners, Takahisa Goto and Keun Yil Kim. (Flores Tr. p. 63). Additionally, the defendant decided, along with William Flores, that the two of them would secretly get a larger share of the money and that they would lie to the other partners to cover the deception. (Flores Tr. pp. 65-6). Both of these instances show that the defendant and Flores were superior, decision making partners who directed the activities of the partnership which included two subordinate partners, Goto and Kim.

Defendant also recruited Goto into the partnership (Goto Tr. pp. 16-21) and directed him to make a payment to a Bank of Guam for the commitment fee on the Pedro's Plaza loan. (Goto Tr. pp.30-1). The subordinate partners were the only ones required make such payments. (Id.).

Even Flores was subject to the defendant's authority. Shinohara's instructions to Flores included, "I don't care what you got to do, ..., just produce those invoices" (Flores Tr. p. 70) and directions about who to make checks payable to in order to conceal the fact that he way the actual recipient of the proceeds. (Flores Tr. pp. 73-4, 97-100 and 103). The defendant also controlled the flow of funds to his subordinate, Goto. (Flores Tr. pp. 104-05 and 114).

The evidence clearly shows that the defendant was an organizer and leader of the conspiracies to defraud the Bank of Guam and to launder the proceeds

B. <u>Abuse of Position of Trust</u>.

The evidence also satisfies the requirement of the sentencing guidelines that for an adjustment for abuse of a position of trust to apply the position of trust must have contributed significantly to facilitating or concealing the offense. U.S.S.G. §3B1.3, Application Note 1. As Mike Naholowaa testified the bank was lulled into carelessness by the political stature of two of the partners, including the "political muscle" of the defendant. (Naholowaa Tr. pp. 108-10). When asked if his failure to properly inspect the Pedro's Plaza project was as a result of reliance on "prominent, powerful men," Mr. Naholowaa said, "...I guess we depended on them to do that, you know, to finish the project as they were going to do." (<u>Id</u>. at 10). Of course, if inspections had been done the misuse of the loan proceeds would have been discovered. Thus defendant's position as Chief of Staff to the Governor of Guam contributed to the concealment of the offense.

RESPECTFULLY SUBMITTED this 30th day of September, 2005.

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice

RUSSELL C. STODDARD
First Assistant U.S. Attorney
Districts of Guam and NMI

By: _____
JEFFREY J. STRAND
Assistant U.S. Attorney

3