UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED
DISTRICT COURT OF GUAM
JAN - 3 2007
MARY L.M. MORAN
CLERK OF COURT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>GIL A. SHINOHARA, aka Gil Shinohara,<br><br>Defendant - Appellant. | No. 05-10739<br>D.C. No. CR-03-00047-WHA<br><br><br>**JUDGMENT** |

Appeal from the United States District Court for the District Of Guam (Hagatna).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District Of Guam (Hagatna) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 12/01/06

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

DEC 2 6 2006

by: _____
Deputy Clerk

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>GIL A. SHINOHARA, aka Gil Shinohara,<br><br>Defendant - Appellant. | No. 05-10739<br><br>D.C. No. CR-03-00047-WHA<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Guam
William H. Alsup, Distict Judge, Presiding

Argued and Submitted November 14, 2006
Honolulu, Hawaii

Before: TROTT, WARDLAW, and W. FLETCHER, Circuit Judges.

Gil A. Shinohara appeals from his jury conviction of conspiracy to commit bank fraud, conspiracy to launder the proceeds of that bank fraud, and from his thirty-two month prison sentence. We affirm both his convictions and sentence.

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

# I.

Because the parties are familiar with the facts, we do not fully recount them here. In September 2004, Shinohara was indicted for, *inter alia*, his role in a plan to defraud the Bank of Guam. The indictment alleged that Shinohara, his long-time friend William B.S.M. Flores and two confederates concocted a scheme to bilk the bank out of $300,000 dollars. The Bank of Guam loaned the conspirators $2 million to purchase a commercial building in Guam and also committed to lend them a further $1 million for use in renovating and repairing the typhoon-damaged building.

From the outset, the conspirators represented to both the bank and the seller that they intended to repair the building so that it could once again be used as an income-earning property. These representations included false invoices that Flores admitted he ginned up and a letter to the bank signed by the conspirators and their spouses purporting to need the $300,000 for repairs. Days after receiving the latter missive, the bank disbursed the $300,000 to Flores. The funds were then converted to the personal use of the conspirators, and were never used to renovate or repair the building. Ultimately the building was sold by the conspirators, again with Bank of Guam financing, to Flores's father. From the

2

proceeds of this sale, the bank was paid the $2.3 million it originally disbursed, plus interest.

## II.

Shinohara argues that the $300,000 from the bank was given to him and his partners as a personal loan with no strings attached to the use of the funds–and that the evidence adduced at trial was insufficient to prove otherwise. Here, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

> The underlying federal crime of bank fraud is committed when someone:
>
> [K]nowingly executes, or attempts to execute, a scheme or artifice–
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

18 U.S.C. § 1344. The "false or fraudulent pretenses, representations or promises" must be material to the securing of the bank's funds to satisfy the elements of bank fraud. *See Neder v. United States*, 527 U.S. 1, 25 (1999). Shinohara was convicted of *conspiring* to commit bank fraud under the general federal conspiracy

3

statute, 18 U.S.C. § 371, which requires at least one overt act in furtherance of the conspiracy by a conspirator. After a conspiracy forms, "[a conspirator] is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the existence of the actors." *Hernandez v. United States*, 300 F.2d 114, 122 (9th Cir. 1962); *see also Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946).

Shinohara contends that the false invoices and the letter signed by him provided insufficient evidence of materiality of the false representations. His argument does not acknowledge that here there was also copious documentary and testimonial evidence from two of his co-conspirators about the formation and goals of the conspiracy, as well as other overt acts of misrepresentation. There was a wealth of evidence supporting a jury determination of materiality beyond a reasonable doubt, including: (1) the building was unrentable without repairs; (2) the conspirators constantly represented that they would rent the building; (3) the parties discussed repairs to the building at length; and (4) the bank disbursed the $300,000 only after receiving a letter signed by all of the conspirators and their spouses indicating the need for the funds to commence repairs to the building.

At trial, Shinohara attacked the credibility of Flores at length. He also presented evidence that the bank handled the loan in a highly irregular manner and

4

that the bank never even acknowledged that it was defrauded.[1] While the record paints an unflattering portrait of Guamanian banking practices, that taint does not compel reversing the jury verdict. We find the evidence adduced at trial sufficient to support Shinohara's convictions.

### III.

We reject Shinohara's assertion that the district court deprived him of his Confrontation Clause rights by limiting his cross-examination of Flores. "Whether limitations on cross-examination are so severe as to violate the Confrontation Clause is a question of law we review de novo. Confrontation Clause violations are subject to harmless error analysis." *United States v. Shyrock*, 342 F.3d 948, 979 (9th Cir. 2003) (citations omitted).

The district court imposed narrowly-tailored limitations on cross-examination that did not deprive Shinohara of his rights under the Confrontation Clause. The areas of questioning precluded by the district involved second-order hearsay ascribed to the government in a letter by one of Flores's lawyers. The district court offered Shinohara the opportunity to question Flores on the contents of the letter if he could lay a foundation by first showing that Flores was aware of

---

[1] The defense's trenchant argument won over the jury on many counts; indeed, Shinohara was acquitted on the lion's share of the charges against him.

Case 1:03-cr-00047   Document 254   Filed 01/03/2007   Page 6 of 10

the contents; no such showing was ever made. The district court did not abuse its discretion; rather its preclusion of questioning was prudent and fair–the court only precluded questioning in areas that would be confusing or were likely to force government counsel to take the stand to refute statements attributed to them. The district court allowed extensive and devastating cross-examination of Flores on all other aspects of his plea agreements, indictment, guilty plea, concerns about going to prison and his long-running cooperation with the government.

## IV.

Shinohara asserts three errors in his sentence calculation: incorrect base offense level, improper adjustment for supervisory role, and improper calculation of the loss amount. The government concedes that the base offense level should have been six and not eight.

The district court increased Shinohara's offense level by two based on a finding that he played a supervisory role in the conspiracy under USSG § 3B1.3. "For such an adjustment to be appropriate, there must be evidence to support a finding that the defendant occupied one of the four specified [supervisory] roles, not merely that the defendant was more culpable than others who participated in the crime. . . . [A] single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement." *United States v.*

6

*Morgan*, 238 F.3d 1180, 1186-87 (internal quotations and citations omitted; alteration in original).

There was evidence that on at least two occasions Shinohara directed Flores to make specific distributions of the fraud proceeds. First, he accompanied Flores to the bank, where he instructed him to withdraw $50,000 and issue two cashier's checks, one to Shinohara and one to Shinohara's girlfriend. Second, he instructed Flores to write a check to one of their co-conspirators as part of the previously agreed-upon distribution of the loan proceeds. These two incidents are sufficient to support the supervisory role finding.

Finally, Shinohara argues that the loss calculation of $300,000 is incorrect because the bank loan was repaid in full. The $300,000 loss calculation resulted in a twelve-level increase in the offense level under USSG § 2B1.1(a)(2). Based on application note 3(E) to USSG § 2B1.1, Shinohara argues that this repayment should be credited against the loss. However, this argument is unavailing because it neglects to factor into the equation the $300,000 in repairs to the building – improvements to the bank's collateral – that the bank funded, but were never done, and whose benefit the bank lost.

7

## V.

At sentencing, the district court considered an adjusted offense level of twenty-four, and a sentence range of fifty-one to sixty three months. The proper adjusted offense level, however, is twenty-two, and the corresponding guideline sentence range is forty-one to fifty-one months. In sentencing Shinohara, the district court explained:

> Now, I have seen the overall scope of this case, and what Mr. Shinohara has gone through, what the government was trying to convict him of, what it wound up convicting him of, and the conduct of the Bank of Guam along the way, and I have taken into account deterrence and the need for deterrence. *In the court's judgment, the guidelines range is too severe for the conduct that occurred here. On the other hand, a prison sentence is warranted.*
> In the court's judgment, a sentence of 32 months custody time *is the appropriate sentence in this case.* That will also be accompanied by restitution in the amount of $150,000, and three years of supervised release with conditions.

(emphasis added). It is readily apparent that the district court considered and then rejected the advisory guideline sentence. The court instead, as is within its purview after *United States v. Booker*, 543 U.S. 220 (2005), crafted a sentence under 18 U.S.C. § 3553(a). Post-*Booker* guideline calculation errors remain susceptible to harmless error review. *United States v. Cantrell*, 433 F.3d 1269, 1280 & n.4 (9th Cir. 2006).

8

The low end of the correct guideline range here is forty-one months; ten months lower than the range considered at sentencing, but still nine months more than the sentence imposed. Because the district court unequivocally disregarded the guideline range as "too severe," and instead sentenced based on other factors under § 3553(a), we find the guideline calculation error harmless.

Accordingly, the convictions and sentence are **AFFIRMED**.